ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **JOSUÉ ORTIZ COLÓN**<br>RECURRENTE(S)<br><br><br>V.<br><br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**<br>RECURRIDA(S) | **KLRA202500155** | ***REVISIÓN DE DECISIÓN ADMINISTRATIVA*** procedente del Departamento de Corrección y Rehabilitación (DCR)<br><br>Caso Núm.:<br>**ICG-976-2024**<br><br>Sobre:<br>Programa Pre-Reinserción |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 10 de marzo de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **JOSUÉ ORTIZ COLÓN** (señor **ORTIZ COLÓN**), por derecho propio e *in forma pauperis*, mediante una *Revisión de Decisión Administrativa en Auxilio de Jurisdicción* entablada el 25 de febrero de 2025. En su recurso, nos solicita que revisemos la *Evaluación Programa de Pre-Reinserción* decretada el 10 de enero de 2025 por la Oficina de Desvíos y Comunitarios del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**.[1] Mediante este discernimiento administrativo, se determinó como **no favorable** su evaluación para participar del programa de pre-reinserción a la libre comunidad para el Centro Nuevas Oportunidades

---

[1] Este dictamen administrativo fue notificado el 7 de febrero de 2025. Apéndice de *Revisión de Decisión Administrativa en Auxilio de Jurisdicción,* anejo 4. Se toma conocimiento judicial del caso: **KLRA202400667** en la cual el 21 de febrero de 2025 se dictó *Sentencia*.

Número Identificador: SEN2026_____

de Arecibo. Su justificó que: "[s]e deberá observar los ajustes del MPC por un (1) año adicional".

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El señor **ORTIZ COLÓN,** quien se encuentra bajo la custodia del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR),** está cumpliendo una pena de 198 años en la Institución Correccional Guerrero en Aguadilla, Puerto Rico. Ello por los delitos de asesinato en primer grado; asesinato en segundo grado; robo; tentativa de robo; Ley de Armas; conspiración; y daño agravado.

El día 21 de julio de 2023, se suscribió el *Acuerdo del Comité de Clasificación y Tratamiento* en la cual se concluyó: "[s]e refiere al Programa de Pre Reinserción Comunitaria Centro de Rehabilitación y Nuevas Oportunidades de Arecibo (CRNO)".[2] Ello para su evaluación y continuidad del proceso de rehabilitación.

Al tiempo, el 1 de noviembre de 2023, se precisó la *Evaluación Programa de Pre-Reinserción* determinando posponer el caso.[3] Ello fundamentado en que se "[r]equiere referido para investigación del plan de salida propuesto al Negociado de Programas Especiales y de Rehabilitación. Requiere referido a Oficina Servicio de Aviso a Víctimas sobre el Estatus del Recluso (SAVER) para la correspondiente certificación de notificación a partes perjudicadas".

El 5 de junio de 2024, se llevó a cabo la reunión del Comité de Clasificación y Tratamiento y se firmó un *Acuerdo del Comité de Clasificación y Tratamiento* expresando: "[s]e ratifica su custodia mínima [...] Continuará asignado al curso vocacional de sistemas de oficina. Se refiere a Sección de

---

[2] Apéndice de *Revisión de Decisión Administrativa en Auxilio de Jurisdicción,* Anejo 1.

[3] *Íd.,* Anejo 2. El 7 de noviembre de 2023, el señor **ORTIZ COLÓN** recibió su copia de la *Evaluación Programa de Pre-Reinserción*.

Programa de Evaluación y Asesoramiento para actualizar evaluación psicológica. No se refiere al Programa de Trastornos Adictivos".[4]

Más adelante, el 28 de octubre de 2024, se solventó una *Evaluación Programa de Pre-Reinserción.*[5] Aprestó posponer el caso por requerir "evaluación adicional para cumplir con lo dispuesto en el Plan de Reorganización #2-2011 en sus artículos 17, 18, y 19 sobre los Derechos de las Víctimas de Delitos".

Ulteriormente, el 10 de enero de 2025, se deliberó la *Evaluación Programa de Pre-Reinserción* objetada. Inconforme, el 25 de febrero de 2025, el señor **ORTIZ COLÓN** acudió ante este Tribunal de Apelaciones mediante su *Revisión de Decisión Administrativa en Auxilio de Jurisdicción.* Señala el(los) siguiente(s) error(es):

> Erró el DCR al determinar que el caso es No Favorable- ello luego de- el mismo DCR identificar que el caso era favorable y luego de haber estudiado, analizado y determinado que el MPC es un candidato potencial y luego de haber preparado un informe y presentado el mismo ante el CCT de conformidad al Apartado IV Letra C inciso núm. 1 y 2 de la O.A. DCR-2023-03, *supra.* Lo que catalogamos contraproducente y contrario a derecho. Dicha actuación es arbitraria, caprichosa, irrazonable e ilegal.

> Erró el DCR al no basar su determinación en evidencia sustancial que obra en el expediente, erró en la aplicación e interpretación de las leyes y los reglamentos que se les ha encomendado administrar, lesionando así los derechos fundamentales del peticionario, al actuar así, arbitraria, caprichosa, irrazonable e ilegalmente, habiendo emitido una determinación final carente de base racional y contraria a derecho.

> Erró el DCR al denegar al peticionario participar del proyecto para la Pre-Reinserción a la libre comunidad, ignorando así que su actuación supone un grave perjuicio para el Sr. Ortiz, en tanto interrumpió el proceso de rehabilitación aprendido por éste. Proceso que constituye la meta principal del sistema penal según la Carta Magna. Dicha acción privó al peticionario (y lo priva) de poder contar con mayores elementos a la hora de ser considerado para una libertad condicional, conforme lo establece la política pública del mismo Departamento.

> Erró el DCR al notificar al peticionario sobre la determinación final en relación al referido a proyecto para la Pre-Reinserción a la libre comunidad con fecha de 21 de julio de 2023, fuera del término

---

[4] Apéndice de *Revisión de Decisión Administrativa en Auxilio de Jurisdicción*, Anejo 7. Esta le fue suministrada el 5 de junio de 2024 al señor **ORTIZ COLÓN**.
[5] Apéndice de *Revisión de Decisión Administrativa en Auxilio de Jurisdicción*, Anejo 3. Esta fue entregada el 13 de noviembre de 2024 al señor **ORTIZ COLÓN**.

establecido en la LPAUG y de la Reglamentación vigente. Incumpliendo así con las garantías mínimas contenidas en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada. 3 LPRA § 9602.

Erró el DCR al denegar al peticionario poder participar del proyecto de Pre-Reinserción a la libre comunidad, coartando su interés libertario y coartando la política pública de la agencia Sección 19 Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico LPRA Tomo I. Ya que a través de dicho programa viabiliza que el confinado trabaje para el sustento económico de sus familiares o estudios mientras utiliza un brazalete electrónico, el cual es el deseo e interés del Sr. Ortiz.

Erró el DCR al incumplir con el mandato de rehabilitación al utilizar como único factor en la determinación denegada, que se deberá observar los ajustes del MPC por un (1) año adicional, determinación totalmente contraria a derecho y contraria a la Orden Administrativa DCR-2023-03 de 7 de septiembre de 2023.
Erró el DCR al actuar irrazonable e ilegal, ya que su determinación final conduce a la comisión de una injusticia, ya que su interpretación produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública.

Erró el DCR al abusar de su discreción al abstenerse de realizar el correspondiente análisis hermenéutico de formar conclusión para determinar si el peticionario cualifica conforme a los criterios de elegibilidad contenido en el Apartado IV de la Orden Administrativa DCR 2023-03 de 7 de septiembre de 2023.

En desacuerdo, el 26 de febrero de 2025, el señor **ORTIZ COLÓN** presentó una *Solicitud de Reconsideración* ante el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**).[6] Expuso que estaba contrariado con la solución de no concederle participar del programa de pre-reinserción a la libre comunidad.

El 5 de marzo de 2025, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) decretó su *Resolución* conteniendo las siguientes determinaciones de hechos: (1) El caso del miembro de la población correccional fue referido para el Programa de Pre-Reinserción el 21 de julio de 2023. (2) El 10 de enero de 2025 se atendió la solicitud del miembro de la población correccional y determinó de [sic] debe observarse sus ajustes por un periodo de un año adicional. (3) Se emitió respuesta y el recurrente la

---

[6] Apéndice del *Escrito en Cumplimiento de Orden*, págs. 3-9.

recibió el 7 de febrero de 2025. (4) El 21 de febrero de 2025 se recibe solicitud de Reconsideración del recurrente con las siguientes alegaciones: en que no está de acuerdo con la determinación del Departamento de Corrección y Rehabilitación. Decidió que "[l}uego de evaluar la totalidad de los documentos del expediente de Pre-Reinserción del miembro de la población correccional se determina denegar la solicitud de Reconsideración por la siguiente razón: Concluimos con la determinación de la revaluación de su caso del 10 de enero de 2025"[7].

Ante estas circunstancias, el 10 de abril de 2025, en el caso de marras, dictaminamos *Sentencia* en la cual desestimamos por falta de jurisdicción. El 23 de abril de 2025, el señor ORTIZ COLÓN presentó *Solicitud de Reconsideración*. Más tarde, el 9 de mayo de 2025, decidimos *Resolución* declarando ha lugar el petitorio de reconsideración.

Así, el 12 de mayo de 2025, dispusimos *Resolución* concediéndole al DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR) un plazo perentorio de treinta (30) días para exponer su posición sobre el recurso. El 12 de junio de 2025, el DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR) presentó un *Escrito en Cumplimiento de Orden y Solicitud de Desestimación*. Dadas las circunstancias, el 18 de junio de 2025, mediante *Resolución* se declaró no ha lugar la súplica de desestimación y se le confirió un término perentorio de treinta (30) días para presentar su alegato en oposición al DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR).

El 19 de junio de 2025, el señor ORTIZ COLÓN presentó *Réplica a Escrito en Cumplimiento de Orden y Solicitud de Desestimación*. El 3 de julio de 2025, pronunciamos *Resolución* apercibiéndole a las partes que en conformidad con el Reglamento del Tribunal de Apelaciones no se aceptarían escritos adicionales salvo fuese requerido por este tribunal y se les refirió ver lo decidido los días 18 de junio de 2025 y 27 de junio de 2025.

---

[7] Notificada el 20 de mayo de 2025 al señor ORTIZ COLÓN.

El 24 de julio de 2025, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** presentó un *Escrito en Cumplimiento de Orden.*[8] El 29 de julio de 2025, prescribimos *Resolución* en la cual se le proporcionó un término perentorio de treinta (30) días para presentar su alegato en oposición al **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)**.[9]

El 21 de octubre de 2025, el señor **ORTIZ COLÓN** presentó *Moción Solicitando Conocer sobre el Status del Caso de Epígrafe*. El 25 de noviembre de 2025, el señor **ORTIZ COLÓN** presentó *Moción de Urgencia Solicitando Permiso del Tribunal para Presentar Información Crítica o Evidencia Previa a la Sentencia*. El 7 de enero de 2026, el señor **ORTIZ COLÓN** presentó *Moción de Solicitud de Informe de Status del Caso.*

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *REVISIÓN ADMINISTRATIVA*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[10] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[11]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[12] El criterio rector al momento de pasar juicio sobre una decisión de un

---

[8] El alegato fue traído a nuestra atención el 6 de agosto de 2025.

[9] El 29 de agosto de 2025, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** presentó Moción Informativa y en Solicitud de Orden aduciendo que el 24 de julio de 2025 había presentado su alegato.

[10] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).

[11] 3 LPRA § 9671.

[12] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

foro administrativo es la *razonabilidad* de la actuación de la agencia.[13] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[14]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[15] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[16] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[17]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[18] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

---

[13] *Otero v. Toyota*, 163 DPR 716 (2005).
[14] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[15] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[16] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[17] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[18] *Torres Rivera v. Policía de PR, supra*.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[19]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[20] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[21] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[22] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[23] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[24] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[25]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[26] Así, debemos

---

[19] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).
[20] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[21] *Otero v. Toyota, supra,* pág. 728.
[22] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).
[23] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[24] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).
[25] *Íd.*
[26] *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello, que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[27]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[28] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[29] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[30]

### - B – *ORDEN ADMINISTRATIVA DCR-2023-03*

El **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**), como parte de su política pública, debe crear "un sistema integrado de seguridad y administración correccional donde las funciones y deberes armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad".

Así, el 7 de septiembre de 2023, el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**) adoptó la *Orden Administrativa DCR-2023-03* en la cual se instituyó el *Proyecto para la Pre-Reinserción a la Libre Comunidad* (*Proyecto*) que procura que los miembros de la población correccional se

---

[27] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[28] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[29] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.
[30] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.

adapten nuevamente a la vida en la libre comunidad, se prepararen para que puedan integrarse en la vida laboral, se conviertan en personas independientes y productivas para nuestra sociedad y reconozcan que se encuentran ante una nueva oportunidad en sus vidas.[31] El secretario del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** o su representante autorizado podrá conceder el privilegio de participar en el *Proyecto* sujeto al cumplimiento de los criterios de elegibilidad.

Estos criterios de elegibilidad son:

(i) no tener resoluciones administrativas disciplinarias en su contra durante los últimos seis (6) meses. Tampoco puede tener procesos disciplinarios pendientes de resolver. (ii) estar clasificados en custodia mediana o mínima. (iii) no tener pendiente procesos criminales ante los tribunales. (iv) podrá estar disfrutando de pases familiares sin custodia. (v) haber satisfecho la Pena Especial impuesta o poseer un plan de pago, conforme a la Ley Núm. 183-1998, según enmendada, conocida como "Ley de Compensaciones a las Víctimas de Delito". (vi) debe estar en cumplimiento con lo dispuesto en las siguientes leyes: (a) Ley Núm. 175-1998, según enmendada, conocida como "Ley del Banco de Datos de ADN de Puerto Rico". (b) Ley Núm. 243-2011, según enmendada, "Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores". (vii) deberá restarle diez (10) años o menos para cumplir el mínimo de la sentencia. (viii) debe estar cumpliendo con el Plan Institucional asignado favorablemente y presentar buenos ajustes institucionales. Esto de estar certificado por el técnico de servicios sociopenales y contar con el visto bueno del supervisor. (ix) en los casos de los miembros de la población correccional que tengan historial de uso de sustancias controladas o alcohol, deberán haberse beneficiado de tratamiento contra la adicción. (x) en los casos de los miembros de la población correccional convictos por infracción a la Ley Núm. 54 del 15 de agosto de 1989, conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica" o de algún delito de naturaleza sexual, previo a ser considerados para participar del Proyecto, deberán haberse beneficiado del programa Aprendiendo a Vivir Sin Violencia y contar con la recomendación favorable del terapista/psicólogo. (xi) en los casos en que el miembro de la población correccional haya incurrido en el delito de fuga o en la comisión de un nuevo delito, deberá haber transcurrido un mínimo de tres (3) años desde la fecha en que fue sentenciado. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional. (xii) en los casos en que el miembro de la población correccional haya incurrido en violación a las normas o condiciones de algún programa previo, podrá ser considerado solamente por una segunda ocasión adicional, luego de haber transcurrido un mínimo de dieciocho (18) meses desde el incumplimiento. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional. No se considerará para participar del programa si incurrió en la comisión de un nuevo delito durante el disfrute del privilegio. (xiii) no constituir un riesgo para su propia seguridad, la

---

[31] *Orden Administrativa DCR-2023-03.*

de sus compañeros, la comunidad y las víctimas o partes perjudicadas. (xiv) tener una actitud positiva y tener la disposición genuina de trabajar, estudiar, rendir las tareas que se le requieran y de ser orientado en las áreas que sean necesarias. (xv) deberá estar en disposición y actitud favorable para que el patrono, la institución educativa o el centro de tratamiento, pueda darle seguimiento y supervisión a su trabajo, estudios o tratamiento, según aplique. (xvi) estar dispuesto (el confinado o un familiar) a sufragar los costos que conlleve su Supervisión Electrónica, la cual será constante mientras participe del Proyecto, y cualquier otro gasto en el cual incurra, entre ellos, los gastos básicos por los servicios de agua y luz, alimentos y vestimenta.[32]

Podrá ser excluida toda persona convicta de delito grave, a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual, conforme a las disposiciones del Código Penal de Puerto Rico.[33]

Por ello, como parte de este trámite, los técnicos sociopenales serán responsables de evaluar los expedientes de los confinados para identificar los miembros de la población correccional. Una vez se hayan identificado los candidatos, los técnicos sociopenales prepararan un informe a ser presentado ante el Comité de Clasificación y Tratamiento y referir copia al Negociado de Programas Especiales y de Rehabilitación ello a los fines de que se efectué la investigación correspondiente. Recibida la investigación, el Comité de Clasificación y Tratamiento someterá al Secretario Auxiliar de Programas y Servicios su recomendación anejando copia de la liquidación de sentencia actualizada; evidencia de los tratamientos completados, evaluaciones psicológicas y el informe final del Negociado de Evaluación y Tratamiento, si corresponde.[34]

### - C - *REGLAMENTO 8583*

El 4 de mayo de 2015, se aprobó el *Reglamento 8583* conocido como el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional (Reglamento)*. El objetivo de dicho *Reglamento* es que todas las personas institucionalizadas tengan un ente administrativo, en primera instancia, en el cual puedan

---

[32] Apartado IV A de la *Orden Administrativa DCR-2023-03*.
[33] Apartado IV B de la *Orden Administrativa DCR-2023-03*.
[34] Apartado IV C de la *Orden Administrativa DCR-2023-03*.

presentar una solicitud de remedio, con el objetivo de reducir las diferencias que pueda haber entre la población correccional y el personal.[35] Además, de poder evitar o reducir los pleitos ante los tribunales.[36]

Mediante el *Reglamento 8583* se creó la *División de Remedios Administrativo (División)* con el motivo de atender las quejas o agravios que tengan los penados en contra del organismo del **DCR** y su personal. La Regla VI del antes mencionado *Reglamento* dispone que la *División* tendrá jurisdicción para ventilar las quejas sobre cualquier incidente o reclamación que comprenda las disposiciones del *Reglamento*.[37] En lo que respecta a las responsabilidades de los reclusos los remedios solicitados deben ser claros, concisos, honestos y de buena fe.[38]

El recluido que tenga una queja presentará una solicitud de remedio ante la *División*. La reclamación será examinada por un evaluador. Si el internado no está conforme, este puede interpelar una reconsideración ante el coordinador dentro un término de veinte (20) días a partir la notificación de la *Respuesta*.[39] En el caso de que el coordinador deniegue de plano o no conteste la solicitud de reconsideración podrá acudir en *revisión judicial* ante el Tribunal de Apelaciones en un término de quince (15) días.[40]

- III -

En este caso, el señor **ORTIZ COLÓN** reseña que el **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (DCR)** erró: (1) al determinar su caso como *no favorable* luego de identificar su expediente como favorable, efectuar una investigación y su actuación es arbitraria, caprichosa, irrazonable e ilegal; (2) no basar su determinación en evidencia sustancial contenida en el expediente; (3) al denegarle participar del *Proyecto* lo cual supone una grave

---

[35] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583* de 4 de mayo de 2015, pág. 1.
[36] *Id.*
[37] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583* de 4 de mayo de 2015, pág. 13.
[38] *Id.,* pág. 15.
[39] *Id.,* pág. 30.
[40] *Id.,* pág. 31.

perjuicio e interrumpió su proceso de rehabilitación; (4) al notificarle fuera del término establecido en la LPAU y reglamentación vigente; (5) al denegarle participar del *Proyecto* coartando su interés libertario; (6) al incumplir con el mandato de rehabilitación al utilizar como factor de la determinación que se deberá observar los ajustes del MPC; (7) al actuar irrazonable e ilegal dado que su determinación conduce a una injusticia; y (8) al abusar de su discreción por abstenerse de realizar el correspondiente análisis para determinar si cualifica conforme a los criterios de elegibilidad.

Por su parte, el DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (**DCR**) ratifica que uno de los criterios para participar en el programa es "no constituir un riesgo para su propia seguridad, la de sus compañeros, la comunidad y las víctimas o partes perjudicadas". Afirma que surge de su expediente administrativo que existe una preocupación por la seguridad de la comunidad. Ante ello, actuó mediante vasta discreción para denegar la participación en el *Proyecto*. Apuntala que el señor ORTIZ COLÓN no ha señalado prueba alguna que obre en el expediente que menoscabe la presunción de legalidad y corrección que reviste el fallo administrativo.

Percibimos que la *Resolución* está sustentada con el expediente administrativo acompañada de una presunción de legalidad y corrección. Más aún, no existen fundamentos o motivos que justifiquen nuestra intervención con la discreción administrativa del **DCR,** en torno a la participación del señor ORTIZ COLÓN en el *Proyecto para la Pre-Reinserción a la Libre Comunidad*. Las alegaciones del señor ORTIZ COLÓN carecen de fundamento para derrotar la presunción de validez de la *Resolución.* No hace mención de cuál es la otra prueba que entiende reduce o menoscaba la determinación de la agencia. Tampoco se ha demostrado que la agencia administrativa haya actuado de manera arbitraria, irrazonable o ilegal, o afectado los derechos fundamentales del señor ORTIZ COLÓN. En consecuencia, no procede que sustituyamos el criterio administrativo por la

nuestra, y atinamos que debemos abstenernos de intervenir con la *Resolución*. Por ello, discernimos que el **DCR** no incidió en el(los) error(es).

- **IV** -

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución* expedida el 10 de enero de 2025 por la Oficina de Desvíos y Comunitarios del **DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN** (**DCR**). Se dan por no puestas la *Réplica a Escrito en Cumplimiento de Orden y Solicitud de Desestimación* presentada el 19 de junio de 2025 por el señor **ORTIZ COLÓN;** y la *Moción de Urgencia Solicitando Permiso del Tribunal para Presentar Información Crítica o Evidencia Previa a la Sentencia* presentada el 25 de noviembre de 2025 por el señor **ORTIZ COLÓN.**

**Notifíquese inmediatamente.**

**Notifíquese al(a la) señor(a)** JOSUÉ ORTIZ COLÓN **quien se encuentra bajo la custodia del** DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN (**DCR**): **Institución Correccional Guerrero Edif. 8-A 1 Celda #15 PO Box 3999 Aguadilla, PR 00605 o en cualquier institución en donde se encuentre.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Marchand concurre con el resultado sin opinión escrita. La Jueza Cintrón Cintrón disiente y puntualiza que entiende que la controversia planteada, se tornó académica ante el devenir del tiempo.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones